**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

JAMES W. GRIFFIN,

                **Petitioner,**

      **v.**                         **CASE NO.  12-3146-SAC**

DAN SCNURR,Warden, et al.,

                **Respondents.**

## MEMORANDUM AND ORDER

This pro se petition for writ of habeas corpus was filed by a state inmate pursuant to 28 U.S.C. § 2254.  Respondents filed an Answer and Return, and petitioner filed his Traverse as well as a "Motion for Citation of Supplemental Authorities."  Having considered these filings, the court rules upon petitioner's motions and requires additional briefing by both parties.

## CLAIMS IN FEDERAL PETITION

In his federal petition, Mr. Griffin claims: (1) the "Aid/Abet instruction" impermissibly lowered the State's burden on the element of intent; (2) ineffective assistance of appellate counsel in that she abandoned 7 of the 10 claims that had been presented to the Kansas Court of Appeals (KCA) on direct appeal to the Kansas Supreme Court (KSC) against his wishes and thereby "sabotaged" his exhaustion efforts; and (3) prosecutorial misconduct in misrepresenting the law of aiding

1

and abetting in a manner that shifted the State's burden of persuasion.


## PROCEDURAL HISTORY

In 2005, Mr. Griffin was convicted in the District Court of Shawnee County, Kansas of attempted second-degree intentional murder (K.S.A. 21-3402(a)(K.S.A. 2006 Supp.) and K.S.A. 21-3301), attempted aggravated robbery (K.S.A. 21-3427 and K.S.A. 21-3301), and conspiracy to commit aggravated robbery (K.S.A. 21-3427 and K.S.A. 21-3302). *State v. Griffin*, 153 P.3d 570, *1 (Kan.App. Mar. 16, 2007), *rev.denied* (Kan. Sept. 27, 2007)(hereinafter *Griffin DIRAPP)*. He was sentenced to 296 months in prison. These offenses arose out of an attempted robbery of a Carlos O'Kelly's restaurant in Topeka in 2002.[1] *See Griffin v. Kansas*, 260 P.3d 1250, *1 (Kan.App. Oct. 7, 2011), *rev.denied*, (Kan. Mar. 16, 2012)(hereinafter *Griffin PC2)*. "Griffin was alleged to have been the driver of the vehicle from which the shooter exited to shoot the general manager of the restaurant." *Id.* The manager was seriously and permanently injured as a result of the shooting.

Mr. Griffin directly appealed. The opinion of the KCA indicated that Griffin, represented by appointed appellate

---

[1]     The full factual background of the crimes is set forth in the opinion of the KCA on direct appeal, *Griffin DIRAPP* at *1-*2 and need not be repeated here.

counsel, raised 10 different issues in this initial step of his direct appeal: (1) district court erred in failing to give a jury instruction on informant testimony; (2) prosecutorial misconduct during trial and closing by use of improper cliché and references to facts not in evidence; (3) the evidence was insufficient to convict Griffin of attempted second-degree intentional murder and attempted aggravated robbery; (4) defective complaint failed to provide sufficient notice of charges; (5) Batson challenge to jury selection; (6) district court erred in failing to instruct the jury on reckless attempted second-degree murder as a lesser included offense; (7) district court erred in sentencing; (8) excessive publicity denied fair trial; (9) jury misconduct and (10) ineffective assistance of trial counsel. See *Griffin DIRAPP*. The KCA affirmed. Appellate counsel filed a Petition for Review,[2] which the Kansas Supreme Court (KSC) summarily denied on September 27, 2007.

Mr. Griffin then pursued pro se challenges to his convictions by way of state collateral proceedings. On April 1, 2008, he filed his first state post-conviction motion pursuant

---

[2]     Years later, the KCA noted in its unpublished opinion on subsequent collateral review that in his direct-appeal Petition for Review Mr. Griffin's counsel had "argued erroneous jury instructions on alibi testimony, prosecutorial misconduct, and denial of constitutional right to jury selection." See *Griffin v. State*, 260 P.3d 1250, *1 (Oct. 7, 2011), *rev.denied*, (Kan. Mar. 16, 2012)(hereinafter *PC1*). However, this is not a complete picture of the issues raised in that Petition for Review.

to K.S.A. 60-1507. This motion was denied, and the denial was affirmed by the KCA on March 12, 2010. *Griffin PC1*. The KCA summarized petitioner's claims as: (1) ineffective assistance of trial counsel "for failing to move to dismiss the attempted second-degree murder charge because the charging document was defective in that it did not allege that Griffin was an aider and abettor of the charged attempted second-degree murder" and (2) failure of trial court "to instruct the jury on aggravated battery as a lesser included offense of attempted second-degree murder." *Griffin PC1* at *1.[3] The KSC denied review on May 18, 2010.

On June 15, 2010, petitioner filed a pro se "motion for relief from judgment" under K.S.A. 60-260 in Shawnee County District Court in which he sought a new trial on the count of Attempted Murder, Intentional Second-Degree, K.S.A. 21-3402(a).[4] He argued that the giving of Jury Instructions No. 7 and No. 8

---

[3]    The KCA preliminarily noted "that Griffin has submitted four Rule 6.09(b) . . . letters" in addition to his (appellate) brief in this first collateral appeal. They found that "the letters fail to comply with Rule 6.09(b) by setting forth a citation or a *brief* (emphasis in original) statement concerning application of the citation," that "Rule 6.09(b) letters are not to be used as another briefing opportunity," and "we do not consider those parts of a Rule 6.09(b) letter that fail to comply with the rule." *Griffin PC1 at* *1.    No mention is made of what issues were raised in these letters, and the court has not located them in the records.

[4]    In this motion, Mr. Griffin claimed that the collateral-appeal Petition for Review "contained a Sup.Ct.Rule 6.09 letter" which complained about jury instructions No. 7 and No. 8.  He also claimed that it was clear error for his trial attorney not to object to these instructions.  In support of his arguments, he cited *State v. Overstreet,* 288 Kan. 1, 200 P.3d 427 (Kan. 2009).  Petition (Doc. 1-1) at 13.  He stated that the KSC denied review on direct appeal because "it was not properly before the court" and that the issue had never been ruled upon in state court.

4

together impermissibly lowered the State's burden on the element of intent. On November 19, 2010, the state district court found 60-1507 was the exclusive remedy for petitioner's claims, construed the motion as another 60-1507 motion challenging his convictions, and denied it as successive. The State alleges that Mr. Griffin did not appeal this denial.

On February 14, 2011, Mr. Griffin filed another pro se 60-1507 motion in Shawnee County District Court, which was denied. *Griffin PC2.* In this motion, he claimed that his appellate counsel was ineffective in that she "sabotaged" his direct appeal by abandoning several issues in his Petition for Review. The KCA affirmed, and the KSC denied review on March 16, 2012. *Id.*

Mr. Griffin filed his pro se § 2254 petition in federal court on June 19, 2012.

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM

Petitioner presents Ground Two in his petition as: "Ineffective Assistance of appellate counsel: (Joyce Yeager)." In support of this claim,[5] he alleges that his appellate counsel

---

[5]    Following his statement of this claim in his federal petition, Mr. Griffin adds "(see motions filed)." He does not otherwise describe the motions or pinpoint their location. This court is not required to search every motion filed by petitioner in state court in an attempt to ascertain what factual basis and arguments he might be making to support this claim. It was the petitioner's responsibility to set forth the facts and arguments in his federal petition.

raised 10 issues on direct appeal to the KCA, then without his permission and contrary to his "clearly identified" desire, abandoned 7 of those claims by failing or refusing to present them to the KSC in his Petition for Review. In addition, he complains that appellate counsel failed to raise the claim of ineffective assistance of trial counsel as he requested. He alleges that appellate counsel thereby "sabotaged" his ability to bring the abandoned claims in a 60-1507 motion and in a federal habeas petition.

Petitioner first raised this claim in state court in his second 60-1507 motion. The state district judge found that this claim could have been but was not raised in Mr. Griffin's first 60-1507 motion and that he provided no excuse for his failure to assert it there. They held that this motion was "clearly successive" as well as untimely, and that manifest injustice was not shown. *Griffin PC2 at *3.* In addition, the judge found "nothing to support the Petitioner's conclusory allegation that his appellate counsel was ineffective." The judge concluded that petitioner had "failed to establish that counsel's assistance on appeal was deficient or that any alleged deficiency prejudiced his rights to a fair trial." *Griffin P2* at *1. The KCA reasoned that "[a]pellate counsel is not required or obligated to raise all the issues the defendant requests," and that "[c]ounsel should only raise issues that in

his or her reasonable professional judgment have merit." *Id.* at *2. In addition, they found that this was "precisely what Griffin's counsel did." *Id.*

Petitioner argues again before this court that on direct appeal he had a right to have all the claims that were argued in his brief to the KCA presented in his Petition for Review to the KSC and that the record shows he is reiterating what appellate counsel abandoned on review to the KSC. He specifically mentions his claims that the essential element of intent was not proven and that his trial counsel was ineffective as important claims that were abandoned by appellate counsel.

Because Mr. Griffin did not raise this claim in his first 60-1507 motion, he did not fully and properly exhaust state court remedies when they were available. It has long been established that exhaustion of available and adequate state court remedies is a prerequisite to filing a habeas corpus petition in federal court. *Granberry v. Greer*, 481 U.S. 129 (1987); *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). Under normal circumstances, where state remedies are still available and time is left on the one-year statute of limitations, a federal court dismisses unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies. See *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997).

However, respondents assert in their Answer and Return that this claim was procedurally defaulted in state court and is therefore barred from federal habeas corpus review. In support, they point to the facts that petitioner did not raise this claim in his first 60-1507 motion, and when he tried to present it in his second 60-1507 motion the KCA found it was successive and procedurally defaulted. When a state prisoner has procedurally defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner demonstrates either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice will result if the merits of the claims are not addressed in the federal habeas proceeding. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *House v. Bell*, 547 U.S. 518, 522 (2006)("Out of respect for the finality of state-court judgments federal habeas courts, as a general rule, are closed to claims that state courts would consider defaulted.").

In his Traverse, petitioner makes no real attempt to allege facts showing cause and prejudice for his failure to raise this claim in his first 60-1507 motion. Nor does he allege any facts to establish that a fundamental miscarriage of justice will result if this claim is barred from federal habeas review. His

allegation in his Traverse that it would be a miscarriage of justice not to "notice" his right to effective assistance of counsel is completely conclusory. Petitioner instead baldly claims that Respondents are "piece-mealing" his constitutional rights and "skipping the facts" of his claims, and continues to argue the merits of his claims. He generally refers to the "record on all pro se motions filed" prior to and on direct appeal, and claims they "are still consider(ed) pending."[6]

Months after filing his Traverse, petitioner has submitted the statement of a witness recanting trial testimony and asserts actual innocence based thereon. The court finds, for reasons discussed later herein, that this filing is not sufficient to establish the miscarriage-of-justice exception to procedural default. The court concludes that petitioner procedurally defaulted his claim of ineffective assistance of appellate counsel and has failed to overcome the procedural default. Accordingly, this claim is barred from federal habeas review.

Even if this court were to consider petitioner's claim regarding appellate counsel, it would find that it does not entitle him to relief. Petitioner has alleged no facts here or in state court to establish that the professional decision on

---

[6]     Petitioner also asks this court to "take notice of entire record of (his) constitutional claims and (his) pro se pleadings." While the court ultimately will consider all relevant state court records provided with this case when necessary, it reiterates that petitioner does not adequately present his claims or facts in support by baldly referring to all pro se pleadings previously filed by him in state court.

the part of his appellate counsel to advance only the stronger of his claims to the KSC amounted to deficient performance under prevailing professional norms. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Nor has he alleged any facts to establish how he was prejudiced by counsel's decision. Petitioner exhibits a letter from appellate counsel dated July 20, 2007, in which Ms. Yeager explained the following to him:

> On a Petition for Review, you bring your best arguments and limit the number of issues to five or less. . . . It was and is my professional opinion that the Petition for Review is stronger because it is limited to the strongest issues.

Petition (Doc. 1-1) at 6. Thus, it is plain that counsel exercised her professional judgment in determining what claims to present in the Petition for Review. Furthermore, not a single fact has been alleged to suggest that his appellate counsel acted to "sabotage" Mr. Griffin. Petitioner's conclusory presentation of this claim was one of two grounds for its dismissal by the state courts. This court finds that petitioner has failed to state sufficient facts to support this claim in his federal petition as well.

Furthermore, the court finds for reasons that follow that the other claims in this federal petition, the alleged abandonment of which underlies petitioner's claim of ineffective appellate counsel, were in fact presented by appellate counsel in the Petition for Review to the KSC on direct appeal.

Therefore, the other claims that Mr. Griffin considered important enough to raise in his federal petition were neither abandoned by appellate counsel nor procedurally defaulted.

## ERRONEOUS JURY INSTRUCTIONS CLAIM

Petitioner claims that the giving of the "Aid/Abet instruction" together with the "reasonable foreseeable" instruction to the jury at his trial was erroneous and violated his right to a fair trial and to due process.[7] In support, he alleges that the crimes of which he was convicted were specific-intent crimes. He argues that the challenged instructions impermissibly lowered the State's burden on the element of intent[8] and that, as a consequence, the element of intent was not proven by the State and the options for the jury to make findings of intent were taken away. He cites *State v. Overstreet*, 288 Kan. 1, 200 P.3d 427 (Kan. 2009). In his Traverse, he alleges that his appellate counsel clearly presented this ground to the KCA and that he is "reiterating what appellate counsel abandoned." He specifically refers to the argument that there was insufficient evidence of his intent

---

[7]   Respondents summarize this claim as "jury instructions numbers 7 and 8, when given together, denied him a right to a fair trial by impermissibly lowering the State's burden of proof on the element of intent."

[8]   In his supporting facts for this claim, petitioner again baldly alleges that his trial counsel was ineffective, and again alleges no facts to support this claim.

to commit either aggravated robbery or attempted intentional second-degree murder.

Jury Instructions 7 and 8 were not objected to at trial. Moreover, when the basis for this claim was presented to the KCA on direct appeal, it was not characterized as a challenge to jury instructions. However, it is also not disputed that petitioner presented the substance of this claim to the KCA on direct appeal in his argument that "his attempted second-degree intentional murder conviction was based on insufficient evidence because it was not established that there was an intent to kill the victim." *Griffin DIRAPP* at *6.[9]

---

[9]    The Brief of Appellant submitted by Griffin's counsel on direct appeal is provided with the state court records and shows the arguments made to the KCA by appellant on direct appeal. In support of this claim, appellate counsel argued that:

> There was, however, no instruction clearly defining intent. Rather . . . Instruction number 7 stated that a person who intentionally aids and abets another to commit a crime with intent to promote the crime is guilty or responsible regardless of the extent of the accused's involvement (Vol. 1, 106) and the Instruction in number 8 stated that a person who intentionally aids and abets another to commit a crime is responsible for the crime if the other crime was reasonably foreseeable (Vol. 1, 107). The jury was left to conclude that any crime committed demonstrated intent to commit intentional second degree murder. When the jury is instructed, instead, that "intentional" is defined as "willful and purposeful", the jury can determine whether or not mere association is adequate to convict. Without the intent definition for murder, the instruction directing that intent is willful and purposeful, the jury was allowed to find that intent for murder was established by promoting robbery or aiding robbery. Kansas, however, does not recognize the crime of attempted second degree felony murder. (citation omitted).

> Properly instructed, the jury would have been (sic) to determine that, although there might have been witness testimony that Appellant had a car similar to the vehicle described by the press and witnesses, any mere association with the car or with the gunman alleged by witness statements was insufficient to

establish criminal responsibility for *intentional* murder (emphasis in original). (Citation omitted). The jury was not allowed the option to make a finding for the defense offered, that there was no evidence of intent for the count of attempted intentional murder.

K.S.A. 21-3301 establishes three essential elements for an attempt: (1) the intent to commit the crime; (2) an overt act toward the perpetration of the crime; and (3) a failure to consummate it. "The State, to convict a defendant of a crime, must show the commission of an overt act plus the actual intent to commit the particular crime." <u>State v. Garner</u>, 237 Kan. 227, 238, 699 P.2d 468 (1985). "Consequently, an attempted crime requires specific intent, as opposed to general intent." <u>State v. William</u>, 248 Kan. 389, 401, 807 P.2d 1292, *cert. denied,* 502 U.S. 837, 112 S.Ct. 120, 116 L.Ed.2d 89 (1991). "One element of an attempt is intent to commit the crime and it is the intent of the accused to attempt to commit the crime that is at issue." (citation omitted). There was no evidence that Appellant intended to commit *intentional* attempted second degree murder. The evidence was insufficient to support the original charge (and the conviction).

Brief of Appellant, Case No. 05-95346, pgs. 14-16 (KCA)(filed Feb. 24, 2006). In connection with petitioner's claim of prosecutorial misconduct, it was also argued that there was no evidence of intent to support the finding that Mr. Griffin was guilty of intentional attempted second-degree murder.

In its Brief of Appellee, the State also discussed this claim as one regarding the sufficiency of the evidence:

Appellant is under the mistaken belief that in order to convict Griffin of attempted intentional second-degree murder, the State had to prove Griffin intended to kill Fraser. . . . However, Appellant's belief is mistaken in that according to Kansas law, the State was only required to prove that Griffin intentionally aided or abetted Franklin in committing the attempted aggravated robbery, and that (Franklin) shot Fraser while carrying out that foreseeable intended crime."

Kansas law is clear that not only is the one who aids and abets another in the commission of a crime criminally responsible for the crime committed, but he is also criminally responsible for any other crime committed by that other person in carrying out or attempting to carry out the intended crime, if that other crime was reasonably foreseeable. K.S.A. 21-3205(1)&(2).

Here, sufficient evidence was presented to establish Griffin intentionally aided and abetted Franklin in committing the attempted aggravated robbery, by driving the "get-a-way" car. As such, he is not only criminally responsible for the attempted aggravated robbery, but also for the foreseeable attempted murder that took place while Franklin was carrying out the aggravated robbery. . . .

. . . Attempted intentional second-degree murder pursuant to

The KCA found this insufficient evidence argument was "not persuasive," and reasoned as follows:

> The unlawful venture in our case was aggravated robbery. There was overwhelming evidence that Griffin and Franklin planned the robbery, Griffin drove Franklin to the Carlos O'Kelly's restaurant, waited outside while Franklin went in, used a gun to demand money, and then Griffin drove Franklin from the scene of an attempted aggravated robbery. "One who stays in a car, in which he knows the main participants in the crime plan to make their getaway, has been held to intentionally aid and abet in the commission of the crime. [Citations omitted.]" Huff, 235 Kan. at 641; see Burton, 235 Kan. at 478; Wilson & Wentworth, 221 Kan. at 366. The evidence, viewed in a light most favorable to the prosecution clearly supports the conclusion that a rational factfinder could have found Griffin guilty of attempted aggravated robbery on an aiding and abetting theory.
>
> * * *
>
> As we have earlier said, all participants are equally guilty, regardless of the extent of their participation. Turner, 193 Kan. at 196. Under K.S.A. 21-3205(2), a person is liable under subsection (1) "for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person or a probable consequence of committing or attempting to commit the crime intended."
>
> * * *
>
> "'If a crime is inherently dangerous to human life, it would be foreseeable that an aggravated felony might occur.' [Citations omitted.]" State v. Warren, 252

_____

K.S.A. 21-3402(a) and K.S.A. 21-3301 is a recognized crime in Kansas and that is the crime Appellant was charged with and convicted of based on his overt actions of aiding and abetting Franklin. In this final portion of Appellant's argument, he completely ignores the law of aiding and abetting and focuses only on attempted felony murder, which is not at issue in this case.

Brief of Appellee, Case No. 05-95346, pgs. 18-20 (June 19, 2006).

> Kan. 169, 173, 843 P.2d 224 (1992). The intended
> crime of aggravated robbery—in this case, pointing a
> loaded gun at a person seated 2 feet away and
> demanding money—is undoubtedly inherently dangerous to
> human life. See State v. Giddings, 226 Kan. 110, 595
> P.2d 1115 (1979) (holding robbery is a crime
> inherently dangerous to human life).
>
> Griffin's attempt to require him to have an intent to
> kill must fail as the attempted intentional second-
> degree murder is clearly a reasonably foreseeable
> consequence of the attempted aggravated robbery.

*State v. Griffin*, 153 P.3d 570, *5-*6 (Table)(Kan. App. 2007).

Respondents allege in the Answer and Return that Mr. Griffin could have, but did not, raise this claim on direct appeal to the KSC; and that he raised it only in his motion for relief from judgment pursuant to K.S.A 60-260, which was denied and not appealed. Petitioner complains that his appellate counsel did not present his claim of erroneous jury instructions to the highest state court on direct appeal because she did not include it in the Petition for Review. When Mr. Griffin filed his first[10] post-conviction motion, he failed to raise this claim. As a result, respondents argue that this claim is deemed waived because it was not raised at trial or on direct appeal, and that petitioner is prevented from raising this claim in a collateral proceeding.

Based on the record before it, this court rejects the position of both parties that this claim was not fully exhausted

---

[10]    In his first 1507 motion, petitioner made an argument regarding jury instructions, but it was failure to instruct on a lesser included offense.

15

and has been procedurally defaulted as a result. The state court records provided by respondents include the "Petition for Review" that was prepared by Ms. Yeager and filed on Mr. Griffin's behalf on direct appeal to the KSC. (Record Vol. XIV, No. 00003). Issue 2 in this Petition was: "Did the prosecutor engage in prosecutorial misconduct when he repeatedly referred to Appellant's guilt in terms of 'in for a penny in for a pound' . . . ?" Counsel's one-sentence statement of this issue in the Petition for Review admittedly does not reflect that it is the same issue under consideration here. Nonetheless, a reading of the underlying arguments made to the KSC under Issue 2 plainly reveals that they are essentially the same as those made in Appellant's Brief to the KCA under the issues of insufficiency of the evidence and prosecutorial misconduct, as set forth herein in a prior footnote. See *Petition for Review,* pgs. 5-11 (KSC Apr. 16, 2007).

One of the main arguments made by petitioner's appellate counsel in briefs to both the KCA and the KSC, and several times in state court by petitioner though not always in correct form or by proper procedure, was that the jury instructions on aiding and abetting and foreseeability together with the arguments made by the prosecutor to explain these instructions diminished or negated the State's burden of proving the essential element of intent. The KSC summarily denied the Petition for Review in

2007.

Over a year later, the KSC decided *State v. Overstreet*, 288 Kan. 1, 200 P.3d 427 (Kan. 2009). In June 2010, *Overstreet* was cited by Mr. Griffin in his Motion for Relief from Judgment that followed the denial of his first 60-1507 motion.[11] In *Overstreet*, the KSC held:

> giving the aiding and abetting instruction in this case--which included language from both K.S.A. 21-3205(1) and (2)--was clearly erroneous because there was "a real possibility that the jury, following this instruction and the prosecutor's subsequent comments . . , convicted Overstreet of the attempted premeditated murder not because the defendant aided or abetted in the attempted premeditated murder but because the murder was a reasonably foreseeable consequence of the aggravated assault.

*Id.* The KSC cited the 2005 case of *State v. Engelhardt*, 280 Kan. 113, 132 (Kan. 2005), as holding that under K.S.A. 21-3205(1), a person guilty of aiding and abetting a premeditated first-degree murder must be found, beyond a reasonable doubt, to have had the requisite premeditation to murder the victim."[12] In *Overstreet*, the KSC noted that "numerous other cases decided by this court" have held "that for a defendant to be convicted of a specific-intent crime on an aiding and abetting theory, that

---

[11] It is not clear that this was not actually a motion for relief from the judgment entered in the first 1507 proceedings rather than another 1507 motion. It is clear that petitioner was trying to raise a claim similar to that raised in *Overstreet*, but did not have this particular case to cite prior to this time.

[12] It has been held by the KCA in an unpublished opinion that *Overstreet* was not an "intervening change in the law" due to *Engelhardt decided* in 2005. *Coleman*, 283 P.3d at *6.

defendant must have had the same specific intent to commit the crime as the principal." *Overstreet*, 288 Kan. at 13. (citations omitted); see also *Coleman v. State*, 283 P.3d 840 (Kan. App. 2012)(Table); *State v. Garner*, 286 P.3d 239, *2-*3 (In this case it was error when "the jury was instructed on the lesser-included crime of attempted second-degree murder pursuant to K.S.A. 21-3402(a), which defines the crime as intentionally killing a human being;" and "[s]econd-degree murder is a specific-intent crime;" then in "closing arguments, the prosecutor told the jury that it could find Garner guilty" by finding that the principal "was the gunman and Garner aided and abetted him."), *rev.denied* (Kan. May 22, 2013); *State v. Douglas*, 261 P.3d 979, *9 (Kan.App. 2011)(Table)(instruction clear error where aiding and abetting instruction indicated to the jury that it could convict Douglas of the attempted capital murder if the attempted capital murder was a reasonably foreseeable consequence of aiding and abetting Garner in committing another crime.), *rev.denied* (Kan. May 4, 2012); *State v. Hayes*, 270 Kan. 535, 543, 17 P.3d 317 (2001); *but cf., State v. Garner*, 286 P.3d 239, *16 (Kan.App. 2012)(Table)(The rule in *Overstreet* does not apply to Garner's aggravated robbery conviction because that rule applies only to a conviction for a specific-intent crime using an aiding and abetting theory.); *State v, McDaniel & Owens*, 228 Kan. 172, Syl. ¶ 3, 612 P.2d 1231

(1980)(Aggravated robbery is a general intent crime, not a specific-intent crime.); *State v. Barnett*, 2013 WL 4729219, *4 (Kan.App. Aug. 30, 2013)("Recently, a panel of this court noted that the holding in *Engelhardt* relates only to the element of premeditation, suggesting that the instruction is appropriate when limited to other charges, such as aggravated robbery."); *Coleman*, 283 P.3d 840, at *3-4 (foreseeability instruction appropriate in first-degree murder trial when properly limited to aggravated robbery counts). They further found that "confusion between these conflicting instructions," referring to the "aiding and abetting foreseeability instruction," was "exacerbated by the prosecutor's comments." The comments of the prosecutor in *Overstreet* might be viewed as similar to those challenged by Mr. Griffin herein. The court finds that this claim was fully exhausted in state court, and federal review is not barred by the procedural default doctrine.


**<u>PROSECUTORIAL MISCONDUCT CLAIM</u>**

Petitioner claims prosecutorial misconduct. In support of this claim, he alleges that the prosecutor "misstated facts and encouraged the jury to incorrectly apply the laws of conspiracy and the aiding/abetting law as to (attempts)." He claims this resulted in denial of his "right to have a jury decide every element of an offense beyond a reasonable doubt." He further

claims that the prosecutor used the cliché, "in for a penny, in for a pound" throughout his trial; and told the jury "no matter how little evidence of defendant's remotest connection supported a conviction." He argues that this "shift[ed] the burden of persuasion to believe a fact without being proven beyond a reasonable doubt." In his Traverse, he argues that he has a constitutional right to have every element of a charge proved beyond a reasonable doubt. Respondents admit that this claim was exhausted in state court and do not challenge it as procedurally defaulted.

This court liberally construes petitioner's claims of erroneous jury instructions and prosecutorial misconduct together as one claim that the instructions and arguments of the prosecutor presented to the jury at Mr. Griffin's trial diminished or negated the State's burden of proof on the element of intent. *Coleman*, at *4.

Because the State believed petitioner's claim presented as erroneous jury instructions was procedurally defaulted, there has not been adequate briefing on the relevant legal authority, whether or not that authority was violated under the facts of this case and the error was not harmless, and whether or not the state courts' adjudication of petitioner's claim was contrary to any established Supreme Court precedent. The court cautions however, that even if the jury instructions in petitioner's case

20

were erroneous under state case law, errors of state law are not sufficient grounds, standing alone, to entitle a state prisoner to federal habeas corpus relief. Instead, petitioner's claims must evince the violation of a federal constitutional right to state a claim for relief in this court.

### "MOTION FOR CITATION OF SUPPLEMENTAL AUTHORITIES"

Several months after filing his Traverse, Mr. Griffin submitted a pleading he entitled "Motion for Citation of Supplemental Authorities" (Doc. 8). In this motion, he cites one Tenth Circuit case and asserts that this court "must weigh the evidence of perjured testimony." To this brief filing, he has attached the letter/affidavit of Lametrius Crutchfield stating that Crutchfield testified falsely at petitioner's trial because he feared incarceration if he did not cooperate with prosecutors. He has also attached 53 pages of the transcript of Mr. Crutchfield's trial testimony. Petitioner alleges in his motion that he "has recently been made aware" of this retraction by the "prosecution's main witness" and that this evidence was voluntarily supplied. The affidavit is dated in March 15, 2013. Petitioner asks the court to consider this retraction as evidence of his "actual innocence."

This motion is misrepresented in its title as nothing more than one to cite supplemental authorities. Instead, it is a

request for the court to consider a new allegation that petitioner is actually innocent based upon the alleged witness recantation. The court liberally construes this "motion" as a request to present a late counter argument to respondents' assertion in the Answer and Return that two of petitioner's three claims are procedurally defaulted. The motion is granted to the extent that the filing of these materials is allowed as supplemental to petitioner's Traverse.[13]

The court has considered petitioner's supplemental counter argument to respondents' argument of procedural default. This argument is superfluous with respect to petitioner's claims regarding jury instructions, because the court has found herein that this claim was not procedurally defaulted. With respect to petitioner's claims regarding counsel, these materials do not provide the missing factual basis for claims against appellate counsel.[14]

_____

[13]    Nothing in this motion indicates that petitioner proffered these materials as a freestanding claim of entitlement to release based on actual innocence. The motion is not one to amend the federal petition with a complete Amended Petition attached that is upon court-approved forms and contains all petitioner's claims and allegations. Nor is there any attempt in this motion to show that this claim has been exhausted in the state courts. Petitioner presents no basis for allowing an amendment at this late stage after a response has already been filed herein, and he alleges no facts showing that this new claim would relate back and not be time-barred. The court does not construe this motion as a motion to amend petition because it is presented as something else, and would be completely inadequate had it been presented as a motion to amend.

[14]    In any event, to take advantage of the "actual innocence" gateway, a habeas petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. . . ."

## ADDITIONAL BRIEFING ORDERED

The parties are ordered to submit additional briefs on the following issues:[15]

1. Did the jury instructions regarding aiding and abetting and foreseeability together with arguments made by the prosecutor to the jury at petitioner's trial negate or diminish the State's burden of proving the element of intent.

2. If the instructions and arguments were erroneous in this manner, were they error as a matter of state law only, or did they also violate any clearly established federal law, as promulgated by the Supreme Court? See *Cannon v. Gibson*, 259 F.3d 1253, 1270 n.15 (10th Cir. 2001), *cert. denied*, 535 U.S.

---

*Schlup v. Delo*, 513 U.S. 298, 316 (1995). The petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id.* at 324. This new evidence must be sufficient to "show that it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." *Id.* at 327. Generally, recantation of trial testimony years after a trial has concludes is viewed with a great deal of skepticism. See generally *Herrera v. Collins*, 506 U.S. 390, 417, 423 (1993)(because post-trial affidavits are "obtained without the benefit of cross-examination," they "are to be treated with a fair degree of skepticism." (O'Connor, J., concurring)); *Lopez v. Trani*, 628 F.3d 1228 (10th Cir. 2010)(concluding that Petitioner's claim of actual innocence, supported by an affidavit from the victim recanting her trial testimony and averring that the sex was consensual, did not state a valid claim of the denial of a constitutional right). Mr. Griffin's recantation evidence does not meet these standards. He does not discuss any of the other evidence or witness testimony presented against him at trial. Nor is Mr. Crutchfield's statement shown to be either new, reliable, or the type of evidence required under *Schulp*. See *Cummings v. Sirmons*, 506 F.3d 1211, 1223-24 (10th Cir. 2007). Furthermore, Mr. Crutchfield obviously knew of his own false testimony at the time he uttered it eight years before he dated this statement, and no reason is provided as to why this "evidence" could not have been discovered sooner.

[15] The caption of this case and the case number (12-3146) must be written at the top of the first page of petitioner's brief, and it should be entitled "Brief of Petitioner in Response to Court Order."

1080 (2002))("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged.")(citing *Patterson v. New York,* 432 U.S. 197, 210 (1977; see also *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)("[Under our case law] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt."); *Johnson v. Gibson*, 254 F.3d 1155, 1164 (10th Cir. 2001)(Petitioner "cannot state a federal habeas claim unless he can establish that the erroneous instruction so tainted the trial as to deprive him of due process.)(citing see *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)).

3.    If the instructions were erroneous as a matter of clearly established Supreme Court precedent, was the error in any event harmless based on the state court record?

**IT IS THEREFORE BY THE COURT ORDERED** that petitioner's filing entitled "Motion for Traverse" (Doc. 7) is construed as a motion to file traverse and is dismissed as moot because the Traverse was filed upon receipt.

**IT IS FURTHER ORDERED** that petitioner's filing entitled "Motion for Citation of Supplemental Authorities" (Doc. 8) is

construed as a motion to supplement traverse and is granted.[16]

**IT IS FURTHER ORDERED** that respondents are granted thirty (30) days in which to submit Respondents' Brief on the questions set forth herein; and that petitioner is granted twenty (20) days after respondents' brief is filed in which to submit Petitioner's Brief on the same questions.

**IT IS SO ORDERED.**

**Dated this 18th day of September, at Topeka, Kansas.**

**s/Sam A. Crow**
**U. S. Senior District Judge**

---

[16]   It appears that Mr. Griffin mistakenly included "motion" in the titles of these two documents, and that they are not actually motions but his traverse and supplemental materials.