IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMES W. GRIFFIN,

      Petitioner,

    v.                         No. 12-3146-SAC

DAN SCNURR and DEREK SCHMIDT,

      Respondents.


MEMORANDUM AND ORDER

      This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254. Petitioner was found guilty in state court of attempted second-degree intentional murder, attempted aggravated robbery, and conspiracy to commit aggravated robbery based upon his role in driving his half-brother (Franklin) to and from a restaurant in Topeka at which Franklin shot the restaurant's general manager. Petitioner was sentenced to 296 months' imprisonment. He exhausted his direct appeal as well as two KSA § 60-1507 motions, and filed a K.S.A. 60-260 motion for relief from judgment but failed to appeal its denial. Petitioner timely filed this habeas petition.

## I. Procedural History

The procedural history of this case has been established by prior state court decisions including the following: the Kansas Court of Appeals' (KCOA) decision in Petitioner's direct appeal of his sentence, *State v. Griffin*, No. 95,346, 2007 WL 806008 (Kan.App. March 16, 2007); the KCOA's affirming the denial of Petitioner's first K.S.A. 60-1507 motion, G*riffin v. State*, No. 102,328, 2010 WL 923145 (Kan.App. March 12, 2010); and the KCOA's affirming the denial of Petitioner's second K.S.A. 60-1507 motion, G*riffin v. State,* No. 105,807, 2011 WL 4721477 (Kan.App. October 7, 2011).

Additionally, this court previously addressed some of the habeas issues and ordered supplemental briefs on the following issues:

> 1. Did the jury instructions regarding aiding and abetting and foreseeability together with arguments made by the prosecutor to the jury at petitioner's trial negate or diminish the State's burden of proving the element of intent.
>
> 2. If the instructions and arguments were erroneous in this manner, were they error as a matter of state law only, or did they also violate any clearly established federal law, as promulgated by the Supreme Court?
>
> 3. If the instructions were erroneous as a matter of clearly established Supreme Court precedent, was the error in any event harmless based on the state court record?

*Griffin v. Scnurr*, 2013 WL 5276129, 8 (D.Kan. 2013). Those briefs have now been filed.

This Court adopts the underlying facts stated in these prior opinions and shall not repeat them except as necessary to the analysis of this

2

petition. *See* 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004). The Court reviews the factual findings of the state court for clear error, reviewing only the record that was before the appellate court. *Cullen v. Pinholster*, ___ U.S.___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

## II. AEDPA Standard

The habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "erects a formidable barrier to federal habeas relief," *Burt v. Titlow*, ___ U.S. ___ , 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013), and "requires federal courts to give significant deference to state court decisions" on the merits. *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013); *see also Hooks v. Workman*, 689 F.3d 1148, 1162–63 (10th Cir. 2012) ("This highly deferential standard for evaluating state-court rulings demands state-court decisions be given the benefit of the doubt." (quotations omitted)).

Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in

3

the State court proceeding." 28 U.S.C. § 2254(d). *See also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 783–84, 178 L.Ed.2d 624 (2011).

"Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." *Lockett*, 711 F.3d at 1231 (quotations omitted). A state court decision is "contrary to" the Supreme Court's clearly established precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quotations omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams v. Taylor*, 529 U.S. 362, 407–08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Likewise, a state court unreasonably applies federal law when it either unreasonably extends a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir.2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a

4

conviction violated the Constitution, laws, or treaties of the United States.").
"The question under AEDPA is not whether a federal court believes the state
court's determination was incorrect but whether that determination was
unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550
U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

## III. Issue

Petitioner claims that the aiding and abetting instructions in
conjunction with the Prosecutor's comments diminished or negated the
state's burden of proof on the element of intent, necessary for attempted
second-degree murder, violating his right to due process. *See Patterson v.
New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ("[T]he
Due Process Clause requires the prosecution to prove beyond a reasonable
doubt all of the elements included in the definition of the offense of which
the defendant is charged."); *Griffin,* 2013 WL 5276129 at 7.

The challenged aiding and abetting instructions, which the
Prosecutor referred to as the "in for a penny, in for a pound instructions," Tr.
Vol. IV, p. 622, state:

> No. 7 A person who either before or during its commission
> intentionally aids …  another to commit a crime with the intent to
> promote or assist in its commission is criminally responsible for the
> crime committed regardless of the extent of the defendant's
> participation, if any, in the actual commission of the crime.
>
> No. 8 A person who intentionally aids … another to commit a crime
> is also responsible for any other crime committed in carrying out or
> attempting to carry out the intended crime if the other crime was
> reasonably foreseeable.

Tr. Vol. IV, p. 608. These two paragraphs track the language in PIK Crim.3d 54.05 (Responsibility for Crimes of Another) (Instruction No. 7) and PIK Crim.3d 54.06 (Responsibility for Crimes of Another—Crimes Not Intended) (Instruction No. 8.). The Prosecutor repeated the "In for a penny, in for a pound," theme in voir dire (Vol. 6, p. 1-201), in opening statement, Vol. 1, p. 233, and in closing argument, Vol. 9, p. 615. Petitioner contends that this comment and others throughout trial made by the Prosecutor implied that even the slightest evidence of defendant's remotest connection would be sufficient to support a conviction for second degree murder.

## IV. State Court Proceedings

### A. Prosecutor's Comments

Petitioner expressly raised the issue of prosecutorial misconduct on direct appeal, and the KCOA examined whether the prosecutor's comments were outside the wide latitude allowed in discussing evidence and whether the comments were plain error. *Griffin*, 2007 WL 806008, at *5. The KCOA defined "plain error" as "whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Swinney,* 280 Kan. 768, 779, 127 P.3d 261 (2006)." *Griffin*, 2007 WL 806008, 3. It noted the following factors in that determination:

> "(1) whether the misconduct is so gross and flagrant as to deny the accused a fair trial; (2) whether the remarks show ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would

6

likely have little weight in the minds of the jurors." *State v. Elnicki,*
279 Kan. 47, 64–65, 105 P.3d 1222 (2005).

*Griffin*, 2007 WL 806008, at 3.

The KCOA found the prosecutor's statement "in for a penny, in for
a pound" to be a proper illustration of the concept of aiding and abetting,
given the statutory language (K.S.A. § 21-3205), and the Kansas Supreme
Court's interpretation of it to mean that " '[a]ll participants in a crime are
equally guilty, without regard to the extent of their participation.' *State v.
Turner*, 193 Kan. 189, 196, 392 P.2d 863 (1964.)" *Griffin*, 2007 WL 806008
at 4. Petitioner included this issue in his petition for review to the Kansas
Supreme Court.

### B. Jury Instructions

The KCOA addressed the issue of erroneous jury instructions less
directly, while examining the sufficiency of the evidence to convict Griffin of
attempted second-degree intentional murder and attempted aggravated
robbery, 2007 WL 806008, 5-6. This Court previously found the instructions
issue not procedurally defaulted based in large part on the appellate briefs
which referred specifically to the instructions in addressing the sufficiency of
evidence. *See Griffin,* 2013 WL 5276129 at 4-6.

The KCOA relied upon the aiding and abetting statute, Kansas
Supreme Court interpretations of that statute, and "overwhelming evidence
that Griffin and Franklin planned the robbery." It concluded that "[t]he
evidence, viewed in a light most favorable to the prosecution clearly

supports the conclusion that a rational factfinder could have found Griffin guilty of attempted aggravated robbery on an aiding and abetting theory." *Griffin*, 2007 WL 806008 at 5.

The Court then found that that Griffin's attempted second-degree intentional murder conviction was supported by sufficient evidence of the foreseeability of that crime, and that there was no need to prove Griffin's intent to kill the victim, reasoning as follows:

> Further, *State v. Robinson,* 256 Kan. 133, 137, 883 P .2d 764 (1994), is not applicable to our case because it may hold that Kansas does not recognize the crime of attempted felony murder but that is not the crime charged in our case.

> As we have earlier said, all participants are equally guilty, regardless of the extent of their participation. *Turner,* 193 Kan. at 196. Under K.S.A. 21–3205(2), a person is liable under subsection (1) "for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person or a probable consequence of committing or attempting to commit the crime intended."

> "A review of the facts in each case is necessary to determine whether violence is reasonably foreseeable as a probable consequence of committing the crime intended." *State v. Davis,* 4 Kan.App.2d 210, 213, 604 P.2d 68 (1979).

> " 'If a crime is inherently dangerous to human life, it would be foreseeable that an aggravated felony might occur.' [Citations omitted.]" *State v. Warren,* 252 Kan. 169, 173, 843 P.2d 224 (1992). The intended crime of aggravated robbery—in this case, pointing a loaded gun at a person seated 2 feet away and demanding money—is undoubtedly inherently dangerous to human life. See *State v. Giddings,* 226 Kan. 110, 595 P.2d 1115 (1979) (holding robbery is a crime inherently dangerous to human life).

> Griffin's attempt to require him to have an intent to kill must fail as the attempted intentional second-degree murder is clearly a reasonably foreseeable consequence of the attempted aggravated robbery.

> The evidence is clearly sufficient that a rational factfinder could have
> found Griffin guilty beyond a reasonable doubt.

*Griffin*, 2007 WL 806008, 5-6. The KCOA thus found that the government did

not need to prove that Griffin had any intent to kill, because his intent to

commit the aggravated robbery coupled with the foreseeability of the

second-degree murder was sufficient to warrant his conviction of attempted

intentional second-degree murder. The KCOA thus adopted the State's

premise that by driving the "get-a-way" car, Petitioner "is not only criminally

responsible for the attempted aggravated robbery, but also for the

foreseeable attempted murder that took place while Franklin was carrying

out the aggravated robbery." *Griffin*, 2013 WL 5276129 at 5, n. 9

(referencing State's brief).

### C. State Law Error

But it is error under Kansas law to give the two aiding and abetting

instructions together in specific intent cases, and error to give the

"reasonably foreseeable crimes" instruction where the law requires specific

intent for the foreseeable crime. *State v. Overstreet,* 288 Kan. 1, 13, 200

P.3d 427 (2009); *State v. Engelhardt,* 280 Kan. 113, 119 P.3d 1148 (2005).

> We have previously approved of both PIK Crim.3d 54.05 and 54.06
> when they have been used independently. See *State v. Manard,* 267
> Kan. 20, 34, 978 P.2d 253 (1999) (PIK Crim.3d 54.05); *State v.
> Gleason,* 277 Kan. 624, 636–38, 88 P.3d 218 (2004) (PIK Crim.3d
> 54.06).
>
> But we have held that a district judge commits error by giving both
> instructions together in a case when a defendant is charged with a
> specific-intent crime. *State v. Overstreet,* 288 Kan. 1, 13, 200 P.3d

427 (2009) (prosecution for attempted first-degree premeditated murder). We have agreed with the defense position here—in such a situation, the reasonably foreseeable language allows the jury to substitute a "reasonably foreseeable" standard for the specific intent element of the charged offense. *See State v. Engelhardt,* 280 Kan. 113, 119 P.3d 1148 (2005). And, since our 2005 decision in *Engelhardt,* we have consistently applied this rule. *See State v. Cofield,* 288 Kan. 367, 373, 203 P.3d 1261 (2009) ("reasonably foreseeable crimes" aiding and abetting instruction erroneous in that it allowed the jury to apply a foreseeability standard to support conviction requiring specific intent of premeditation); *Overstreet,* 288 Kan. at 13, 200 P.3d 427 (PIK Crim.3d 54.06 "reasonably foreseeable crimes" instruction improper when defendant charged with attempted first-degree premeditated murder).

Judge … committed error when he included both the first and second paragraphs of Instruction No. 8, without further explaining that the "reasonably foreseeable" language did not eliminate the State's burden to prove an aider and abettor's specific intent on any crime requiring such an element … .

*State v. Carr*, 2014 WL 3681049, 163-167 (2014).

Intentional second-degree murder is a specific intent crime. *State v. Pope,* 23 Kan.App.2d 69, 73 (1996), *rev. denied* 261 Kan. 1088 (1997). Thus in Griffin's case, it was error under state law to use the two aiding and abetting instructions together because it permitted the jury to substitute a "reasonably foreseeable" standard for the specific intent element of the charged offenses, including attempted second-degree intentional murder. *Id.*

Respondents counter that using both aiding and abetting instructions was not recognized as error until the *Overstreet* decision in 2009, *after* the KCOA's 2007 decision on Griffin's direct appeal. In *Overstreet*, the defendant had driven a vehicle during a drive-by shooting in which his passenger did the shooting. The district court instructed the jury

10

on aiding and abetting, as the court did here. The Kansas Supreme Court reversed Overstreet's conviction for attempted premeditated murder because the court erroneously instructed the jury that Overstreet could be found guilty if the shooting were "reasonably foreseeable," contradicting the requirement that the crime be premeditated. *Overstreet,* 288 Kan. at 13–15. And that error was not harmless:

> There is a real possibility that the jury, following this instruction and the prosecutor's subsequent comments during closing argument, convicted Overstreet of the attempted premeditated murder not because the defendant aided or abetted in the attempted premeditated murder but because the murder was a reasonably foreseeable consequence of the aggravated assault.

288 Kan. at 14-15.

But the Kansas Supreme Court found the practice of giving both aiding and abetting instructions to be error in 2005, before Griffin's direct appeal, in *State v. Engelhardt,* 280 Kan. 113, 119 P.3d 1148 (2005). And the Kansas Supreme Court has interpreted *Engelhardt's* holding as applying to all specific intent crimes, noting "[i]n *Engelhardt,* however, we held that it was error to provide *both* of these instructions when the underlying crime required a specific showing of intent. *See* 280 Kan. at 131-34, 119 P.3d 1148." *Overstreet*, 200 P.3d at 435. More recently, the Kansas Supreme Court stated that it has "consistently applied this rule" (that the reasonably foreseeable crimes aiding and abetting instruction cannot support a conviction requiring specific intent) since its "2005 decision in *Engelhardt."* *Carr*, 2014 WL 3681049, 166-67. *See also State v. Betancourt*, 299 Kan.

11

131, 135 (2014) (finding that *Overstreet's* reasoning "followed *State v. Engelhardt*"); *Coleman v. State,* 283 P.3d 840 (Table) (Kan.App. 2012) (noting "the Kansas Supreme Court found the same instruction error in both *Engelhardt* and *Overstreet,* but the court reversed only in *Overstreet* because it found the error in *Engelhardt* to be harmless."). A state court's interpretation of state law binds a federal court sitting in habeas corpus. *Bradshaw v. Richey,* 564 U.S. 74, 76 (2005) (per curiam).

Further, Kansas cases predating Griffin's trial consistently hold that for a defendant to be convicted of a specific-intent crime on an aiding and abetting theory, that defendant must have the same specific intent to commit the crime as the principal. *See e.g., State v. DePriest,* 258 Kan. 596, 603 (1995) (explaining that "to find the defendant guilty of aiding and abetting first-degree murder, the jury was required to find that a first-degree murder had been committed and that the defendant aided and abetted that murder with the intent to assist in its completion"); *State v. Schriner,* 215 Kan. 86, 92 (1974) (finding reversible error where kidnapper was deprived of any defense on the issue of intent by instructions to effect that jury need not find intent before it can convict); *State v. Edwards,* 209 Kan. 681, 498 P.2d 48 (1972) (stating that K.S.A. 21–3205 " 'makes no change in the degree of proof of intent necessary to establish criminal responsibility'").

Respondents also allege that *Engelhardt* is distinguishable from this case, apparently because *Engelhardt* dealt with premeditation and this case does not. But respondents do not develop this argument and nothing in *Engelhardt's* analysis limits its applicability to only premeditated crimes. Instead, *Engelhardt* shows that the error lies in instructing the jury on a foreseeability standard when the crime of conviction requires specific intent. *See cases cited above and State v. Cofield,* 288 Kan. 367, 373, 203 P.3d 1261 (2009) (so stating); *State v. Douglas*, 2011 WL 5027085, 261 P.3d 979 (Table) (Kan.App. 2011). The aiding and abetting instruction on foreseeability of the murder thus misstated the Kansas law applicable to Griffin's case at the time of Griffin's direct appeal.

**V. Constitutional Error**

Nonetheless, federal habeas corpus relief is not available for errors of state law. *Estelle*, 502 U.S. at 72. When an erroneous instruction is given, this Court examines only " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Id.* Similarly, habeas relief is not warranted for prosecutorial misconduct unless it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). *See Mayes v. Gibson*, 210 F.3d 1284 (10th Cir. 2000), *cert. denied*, 531 U.S. 1020, 121 S.Ct. 586, 148 L.Ed.2d 501 (2000).

This fundamental-fairness standard constitutes "a high hurdle" for the Petitioner to overcome. *Banks v. Workman,* 692 F.3d 1133, 1148 (10th Cir. 2012). It requires the Court to examine the totality of the circumstances.

> In determining whether a trial is rendered "fundamentally unfair" in light of the conduct of a prosecutor, we examine the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial ... as well as any cautionary steps— such as instructions to the jury—offered by the court to counteract improper remarks."

*Littlejohn v. Trammell,* 704 F.3d 817, 837 (10th Cir. 2013), quoting *Wilson v. Sirmons*, 536 F.3d 1064, 1117 (10th Cir. 2008) (quoting *Bland v. Sirmons,* 459 F.3d 999, 1024 (10th Cir. 2006)).

Here, the jury was directed to find that Petitioner, by intentionally aiding Franklin in the aggravated robbery, was also responsible for a reasonably foreseeable attempted murder. Petitioner contends that the state was thus relieved of its burden of demonstrating, beyond a reasonable doubt, the *mens rea* element of the intentional second degree murder charge, in violation of due process.

Respondents suggest that *Cannon v. Gibson*, 259 F.3d 1253, 1270-72 (10th Cir. 2001), denied habeas relief under similar law, rejecting the very claim made by Petitioner. But there, the aiding and abetting instructions regarding malice aforethought murder under Oklahoma law were consistent with the other instructions given and were not found to be erroneous under state law. Similarly, in other cases cited by Respondents

14

the Court found juries were properly instructed, so denied habeas relief. *Spivey v. Rocha,* 194 F.3d 971, 977 (9th Cir. 1999) (denying habeas relief "because the trial court's instruction on the natural and probable consequences doctrine was a correct statement of law"); *Windham v. Merkle*, 163 F.3d 1092, 1104 (9th Cir. 1998) (finding jury was properly instructed). Here, the jury was improperly instructed under state law.

## A. Clearly Established Federal Law

Due process requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which defendant is charged. *See Patterson,* 432 U.S. at 201; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Due process requires that no person be convicted of a crime except upon sufficient proof, defined as evidence necessary to convince a trier of fact beyond reasonable doubt of the existence of every element of the offense); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) ("(T)he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). This general principle of federal law invoked by the petitioner was clearly established by the Supreme Court at the time of the state court judgment.

But that general principle of federal law does not apply to these facts. The totality of the instructions and argument here, although improper

under Kansas law, did not *omit* the element of intent, but merely permitted the jury to *infer or derive* Petitioner's intent to kill from his willing participation in the robbery and the reasonably foreseeability of the murder. *See* other instructions in harmless error section, below, specifically requiring intent for conviction of attempted second degree murder. *See also Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 190-191, 127 S.Ct. 815, 820-21 (2007) (noting that many States and the Federal Government apply some variation of the "natural and probable consequences" doctrine for aiders and abettors, or permit jury inferences of intent in circumstances similar to those in which California has applied the doctrine); *People v. Durham,* 70 Cal.2d 171, 181, 74 Cal.Rptr. 262, 449 P.2d 198, 204 (1969) (California law makes aiders and abettors criminally responsible not only for the crime intended, but also for any crime that "naturally and probably" results from the intended crime). Kansas' law is similar to California's in this respect.

The Supreme Court has not held that the reasonably foreseeable standard for aiders and abettors' liability violates due process, or that similar standards, such as California's "natural and probable consequences test," unconstitutionally relieve the government of its burden to prove all the elements of the foreseeable offense. Petitioner cites no clearly established United States Supreme Court precedent undermining the validity of Kansas's reasonable foreseeability doctrine on the basis that it fails to require proof of the aider and abettor's intent with regard to the resulting crime. Thus the

state court's rejection of this claim, even if contrary to Kansas law, cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

### B. Application, not Extension, of Supreme Court Holdings

Habeas law requires this court to apply the holdings of well-established law but not to extend them. In *Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649 (2006), the Supreme Court narrowly construed "well-established law" in a habeas case. There, during trial, several members of the deceased victim's family sat in the front row of the gallery, wearing buttons with a photo of the victim on them. Defendant argued that the buttons were inherently prejudicial and deprived him of his Fourteenth Amendment and Sixth Amendment rights. The Ninth Circuit agreed but the Supreme Court vacated that reversal. Although clearly-established law existed regarding state-sponsored practices in the courtroom, no law established when private-actor courtroom conduct is so inherently prejudicial that it deprives a defendant of a fair trial. 549 U.S. at 76. Habeas was thus unwarranted.

In *White*, the trial court had failed to give a blanket no-adverse-inference instruction following defendant's failure to testify at the penalty phase. *White v. Woodall*, ___ U.S. ___, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014). Petitioner alleged this violated his Fifth Amendment rights based on Supreme Court law that drawing an adverse inference about the facts of the

crime (drug quantity) from defendant's silence at sentencing violates the

Fifth Amendment. But the Supreme Court held that drawing an adverse

inference about defendant's lack of remorse or acceptance of responsibility

from defendant's silence at sentencing is sufficiently different that the law is

*not* clearly established.

> Section 2254(d)(1) provides a remedy for instances in which a
> state court unreasonably *applies* this Court's precedent; it does not
> require state courts to *extend* that precedent or license federal courts
> to treat the failure to do so as error. *See* Scheidegger, Habeas Corpus,
> Relitigation, and the Legislative Power, 98 Colum. L.Rev. 888, 949
> (1998). Thus, "if a habeas court must extend a rationale before it can
> apply to the facts at hand," then by definition the rationale was not
> "clearly established at the time of the state-court decision."
> *Yarborough,* 541 U.S., at 666, 124 S.Ct. 2140. AEDPA's carefully
> constructed framework "would be undermined if habeas courts
> introduced rules not clearly established under the guise of extensions
> to existing law." *Ibid.*

*White,* 134 S.Ct. at 1706. The Supreme Court therefore reversed habeas

relief.

> *White* clarifies that habeas relief is available under the

unreasonable-application clause if, and only if, it is so obvious that a clearly

established rule applies to a given set of facts that there could be no

"fairminded disagreement" on the question.

> This is not to say that § 2254(d)(1) requires an " 'identical factual
> pattern before a legal rule must be applied.' " *Panetti v. Quarterman,*
> 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). To the
> contrary, state courts must reasonably apply the rules "squarely
> established" by this Court's holdings to the facts of each case. *Knowles
> v. Mirzayance,* 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251
> (2009). "[T]he difference between applying a rule and extending it is
> not always clear," but "[c]ertain principles are fundamental enough
> that when new factual permutations arise, the necessity to apply the

earlier rule will be beyond doubt." *Yarborough, supra,* at 666, 124 S.Ct. 2140. The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no "fairminded disagreement" on the question, *Harrington,* 562 U.S., at ––––, 131 S.Ct., at 787.

*White,* 134 S.Ct. at 1706 -1707.

Similarly, in *Howes v. Fields*, __U.S. __, 132 S.Ct. 1181,182 L.Ed.2d 17 (2012), the Supreme Court narrowly construed its habeas precedents in determining whether the law was clearly established for purposes of a habeas case. There, a prisoner had been taken to a conference room where two sheriff's deputies questioned him for over five hours about an unrelated crime, without *Mirandizing* him. The Sixth Circuit granted habeas relief, finding *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), "clearly established" that isolation from the general prison population, combined with questioning about conduct occurring outside the prison, makes any such interrogation custodial *per se*. The Supreme Court reversed, finding that its precedents did not clearly establish any such rule. "[T]he holding in *Mathis* is simply that a prisoner who otherwise meets the requirements for *Miranda* custody is not taken outside the scope of *Miranda"* either by the fact a criminal investigation had not begun or by the fact the prisoner was incarcerated for an unconnected offense. *Howes*, 132 S.Ct. at 1188.

Lastly, in *Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140 (2004), a 17-year-old suspect was questioned by police without having been

19

Mirandized. The Ninth Circuit granted habeas relief, finding that the lower court had unreasonably applied federal law by failing to consider 17-year-old suspect's age when determining custodial status. It relied on the Supreme Court's consideration of a suspect's juvenile status when evaluating the voluntariness of confessions and the waiver of the privilege against self-incrimination. *See Haley v. Ohio,* 332 U.S. 596, 599–601, 68 S.Ct. 302, 92 L.Ed. 224 (1948); *In re Gault,* 387 U.S. 1, 45, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). Based on those authorities, the Court of Appeals held that Alvarado's age and experience must be a factor in the *Miranda* custody inquiry as well. 316 F.3d at 843.

But the Supreme Court disagreed, stating:

The Court of Appeals viewed the state court's failure to " 'extend a clearly established legal principle [of the relevance of juvenile status] to a new context' " as objectively unreasonable in this case, requiring issuance of the writ. 316 F.3d, at 853 (quoting *Anthony v. Cambra,* 236 F.3d 568, 578 (C.A.9 2000)).

The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. Brief for Petitioner 10–24. See also *Hawkins v. Alabama,* 318 F.3d 1302, 1306, n. 3 (C.A.11 2003) (asserting a similar argument). There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. Cf. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.

> This is not such a case, however. Our opinions applying the *Miranda* custody test have not mentioned the suspect's age, much less mandated its consideration.

*Yarborough v. Alvarado*, 541 U.S. 652, 666-667, 124 S.Ct. 2140, 2150 - 2151 (2004).

Given the Supreme Court's narrow construction of well-established precedent for purposes of habeas jurisprudence, the Court finds that the state court's handling of this issue, even though contrary to Kansas law, is not contrary to, or an unreasonable application of, clearly established law.

## VI. Harmless Constitutional Error

Nonetheless, in an abundance of caution, the Court assumes for purposes of argument that constitutional error did occur.

The Kansas Supreme Court has determined three out of four times, that this aiding and abetting instructional error has not merited reversal. Harmless error was found in *Carr*, ___ Kan. ___ 2014 WL 3681049, 171 (2014) because the record contained "a wealth of evidence of both the eventual principal's and the eventual aider and abettor's premeditation." Similarly, in *State v. Cofield,* 288 Kan. 367, 373–74 (2009), harmless error was found because intent was established by "overwhelming evidence" that the defendant and his cohorts had taken loaded guns on their car ride, had fired a large number of shots, and that defendant had confessed that he had fired at victims. In *Engelhardt,* 280 Kan. at 133–34, the Court found "overwhelming evidence" demonstrating that Engelhardt was guilty of either

intentionally murdering the victim or aiding and abetting the intentional murder where the victim lying on a couch was stabbed approximately 55 times as defendant and his accomplice stood over him, then each later blamed the other for the stabbings.

The Kansas Supreme Court found reversible error for giving the aiding and abetting foreseeability instruction for a specific intent crime one time, in *Overstreet,* 288 Kan. at 14–15. There, it found "a real possibility that the jury, following this instruction and the prosecutor's subsequent comments, convicted Overstreet of the attempted premeditated murder not because the defendant aided or abetted in the attempted premeditated murder but because the murder was a reasonably foreseeable consequence of the aggravated assault."

### A. Brecht Standard Applies

In this habeas case, the court asks whether the instructional error, compounded by the comments of the Prosecutor, is harmless or is prejudicial. *See Fry v. Pliler,* 551 U.S. 112, 119-120, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007) (holding that when a state court fails to recognize constitutional error or review it for harmlessness under the *Chapman* standard, then habeas review is governed by *Brecht v. Abrahamson,* 507 U.S. 619, 627, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Even where constitutional error is shown, habeas relief is unavailable unless that error had a "substantial and injurious effect or influence in determining the jury's

verdict." *Brecht,* 507 U.S. at 627. *See Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *California v. Roy,* 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (holding that *Brecht*'s harmless error standard applies where the trial court erroneously failed to instruct the jury that it could convict the defendant as an aider and abettor of felony murder only if it found that the defendant had the "intent or purpose" of aiding the confederate's crime); *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that a jury instruction that omits an element of the offense is subject to harmless-error analysis); *Hedgpeth v. Pulido*, 555 U.S. 57, 129 S.Ct. 530, 172 L.Ed.2d 388 (2008) (holding that instructing on multiple theories of guilt, one of which is invalid, is subject to harmless error review).

Similarly, prosecutorial misconduct is subject to a harmless-error standard. *Duckett v. Mullin*, 306 F.3d 982 (10th Cir. 2002). *Brecht* itself involved a prosecutor's improper remarks to the jury concerning the defendant's pretrial silence. *See Brecht,* 507 U.S. at 625-26. In *Brecht*, the Supreme Court analyzed the prosecutorial misconduct under a harmless-error standard, finding that the facts in the case did not involve a "deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct." *Id.* at 637 n. 9. Accordingly, this Court applies the *Brecht* harmless error standard in this case.

## B. Review of State Court Record

To determine the effect of constitutional trial error, the Court reviews the entirety of the trial proceedings. *Estelle*, 502 U.S. at 72; *Hunt v. State of Okl.*, 683 F.2d 1305, 1310 (10th Cir. 1982); *Le v. Mullin,* 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam). In this case, the jury instructions, the comments by the Prosecutor, and the evidence of Petitioner's intent to commit the crime of murder are particularly relevant. *See Henderson v. Kibbe*, 431 U.S. 145, 152 97 S.Ct. 1730 (1977).

## 1. Other Instructions Required Intent

Respondents contend that based on the other instructions alone, any error must be deemed harmless. The "Supreme Court has repeatedly cautioned that instructions must be evaluated not in isolation but, instead, in the context of the entire panoply of instructions." *Cannon v. Gibson*, 259 F.3d 1253, 1271-72 (10th Cir. 2001). *See Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct.1830, 158 L.Ed.2d 701 (2004) (quoting *Boyde v. California,* 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). And juries are presumed to follow their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).

Instructions other than the aiding and abetting instructions discussed above specifically and properly required intent. The court instructed the jury that "the State has … the burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

Tr. Vol. IV, p. 607-08. The aiding and abetting instructions referred to the

"other crimes," and the court instructed on the element of intent for those

"other crimes." Immediately after the aiding and abetting instructions, the

Court instructed on the elements of each Count charged: attempt to commit

murder in the second degree, attempt to commit aggravated robbery, and

conspiracy to commit aggravated robbery. The elements instruction for each

of the three counts included that Petitioner acted "with intent" to commit

that crime. For example, Instruction No. 9 stated that to find Petitioner

guilty of attempted second degree murder, the jury had to find he performed

an overt act "with the intent to commit the crime of murder in the second

degree," then defined second degree murder as an intentional killing. Tr. Vol

IV, pp 608-09. The jury was thus instructed that to convict Petitioner of

attempted second degree murder they had to find his specific intent to

murder.

But the jury was also instructed that if Griffin intentionally aided

Franklin in committing the robbery, Griffin was "also responsible for any

other crime committed in carrying out or attempting to carry out the

[robbery] if the [killing] was reasonably foreseeable." Thus the instructions

as a whole offer two conflicting legal theories: that Petitioner could be

convicted of the attempted second degree murder if he participated in the

aggravated robbery and the crime of attempted murder was reasonably

foreseeable; and 2) that Petitioner could be convicted of attempted second-

degree murder only if he participated in the aggravated robbery and intended to commit murder. The instructions on specific intent thus do not cure the instructional error, but create confusion. *See Francis v. Franklin,* 471 U.S. 307, 322, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) ("Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity.").

The Court understands of course, that aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense. *State v. Robinson,* 293 Kan. 1002, 1038, 270 P.3d 1183 (2012). *See State v. Betancourt,* 299 Kan. 131, Syl. ¶ 1, 322 P.3d 353 (2014) (finding that "the Kansas aiding and abetting statute does not create distinct material elements of a crime but simply assigns criminal responsibility.") But the jury could easily have thought, based on the erroneous instruction and the Prosecutor's argument, detailed below, that it need not find intent to convict an aider and abettor of attempted second degree murder.

## 2. Prosecutor's Comments

Respondents contend that when taken in context, the prosecutor's arguments did not diminish the State's burden of proving the requisite intent necessary to convict Petitioner, citing *State v. Becker*, 290 Kan. 842, 849-51 (2010). But in *Becker*, it does not appear that the jury was given the erroneous aiding and abetting instruction on foreseeability. And in *Becker*,

the Court found no prosecutorial misconduct in the "in for a penny, in for a pound" argument because the prosecutor made "numerous references" to the necessity of finding intent for the "other crime."

> The prosecutor's comments about aiding and abetting were not improper. They must be read in conjunction with the closing argument as a whole, which asserted the need to find intent on Becker's part, and in light of the evidence as a whole, which showed that Becker behaved much like a principal and engaged in conduct from which it could easily be inferred that he intended the elements of the crimes charged.

*Becker,* at 851.

Here, the prosecutor's arguments stressed the foreseeability of the murder and the Petitioner's intent to commit robbery, *not* Petitioner's intent to commit murder, saying:

> Instructions 7 and 8 are your in for a penny, in for a pound instructions. If either before or during its commission you intentionally help or aid someone else to commit a crime, you are equally responsible for that crime regardless of your participation in actually carrying it out. If either before or during its commission you intentionally help someone to commit a crime, you are equally responsible for any other crime committed if that other crime was reasonably foreseeable. If you're in for a penny, then you're in for a pound.

Tr. Vol. IV, p. 622.

> [Franklin and Griffin] are equally responsible for their agreement to rob Carlos O'Kelly's. They are equally responsible for holding Bob Fraser at gunpoint and demanding the money from him, and they are equally responsible for the attempted murder of Bob Fraser because it's reasonably foreseeable that it you're going to rob someone at gunpoint with a loaded gun and you shoot them, that they could die in the course of that robbery.

*Id*.  The Prosecutor concluded:

As far as criminal responsibility goes of Mr. Griffin, it's no different than if he'd walked into Carlos O'Kelly's and shot [the victim] himself. The evidence in this case establishes that James Griffin was in for a penny, it's now time to hold him responsible for the pound.

*Id*, p. 623.

Respondents contend that the Prosecutor intended his "in for a penny, in for a pound" analogy to be directed at the *actions* committed by an aider rather than at the aider's *mens rea*. But the Prosecutor's intent is irrelevant – the Court's concern is with the effect on the jurors of such statements. These and other comments by the Prosecutor may have exacerbated the confusion between the conflicting instructions, persuading the jury that it was not necessary to find Petitioner's intent to kill and that it was instead sufficient that Petitioner intentionally participated in the robbery. *See Overstreet*, 288 Kan. at 8-9.

### C. Evidence Relating to Intent

The element of intent necessary to obtain a conviction for aiding and abetting may be inferred from circumstantial evidence. *State v. Williams*, 299 Kan. 509, 324 P.3d 1078, 1096 (2014). Accordingly, the Court has reviewed the record for such evidence.

The evidence against Petitioner, highly summarized, showed that Petitioner confided in his girlfriend and others that he was the driver in a robbery "gone bad" in Topeka, that he had agreed with his half brother, Franklin, to rob a restaurant in Topeka, and that he had driven Franklin to that restaurant between 9:00 a.m. and 10:00 a.m. and had picked him up

when Franklin exited that restaurant. Franklin went in the back door of the restaurant and demanded money from the victim, the general manager of the restaurant who was seated in his office, by repeatedly shouting, "Give me all your money," and by pointing a gun at him. When Franklin didn't think the victim was complying, Franklin shot him once, fled from the restaurant, and ran to a nearby place where Petitioner picked him up and drove away.

Approximately six months later, Petitioner told his cousin that Petitioner had the gun used in that shooting. Lametrius Crutchfield, Petitioner's cousin, testified that in the summer of 2002 he told Petitioner he needed a gun for his own protection and asked Petitioner for one. Petitioner replied that he had a gun at his house, but "you don't want it." Tr. Vol. III, pp. 436-40. Crutchfield asked Petitioner why, and Petitioner responded that Franklin had shot somebody with it when trying to rob him. Petitioner told Crutchfield he knew this because he had driven Franklin to the robbery. *Id*; Tr. Vol. III, pp. 501-02.

Under *Brecht's* harmless error standard, when a federal judge in a habeas proceeding is in grave doubt about whether trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless, and petitioner wins. *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d

947 (1995). But here, the court has no such doubt. Although the evidence of Petitioner's intent to kill the victim is not "overwhelming," it is sufficient to Persuade the Court that the constitutional error, if any, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. *Cf Pierce v. Lucero*, 202 F.3d 282 (10th Cir. 1999) (trial court erred in failing to instruct on a *mens rea* element for felony murder, but on habeas review, the Tenth Circuit found that the record contained sufficient evidence of malice that the jury would have been justified convicting the defendant on either the deliberate murder or the felony murder instruction).

Petitioner and his brother agreed to rob a restaurant *in the daytime*, and did so. Petitioner participated willingly in that robbery by driving his brother to and from the robbery. Petitioner and his brother did not break into the restaurant during the nighttime, when it would be unlikely for them to encounter other persons there. Instead, they chose to rob a restaurant during the daytime when they knew that it would likely be occupied. Why? It is reasonable to infer that this was because they wanted an employee to be present to retrieve the money from wherever it was kept. And it is not at all reasonable to believe that the robbers intended merely to ask the victim for the money thinking he would comply without the necessity of any show of force, or to leave empty-handed in the event the victim chose not to comply. Given the familial relationship between Petitioner and

the shooter, the participation of Petitioner in driving him to the restaurant, the daytime nature of the robbery, Griffin's possession of the gun after the shooting, and the other reasonable inferences that flow from the totality of the evidence of record, an inference of Griffin's intent for Franklin to use whatever force was necessary, including a gun, to carry out the robbery is reasonable. The facts establish a coordinated effort with a specific illegal objective in mind. Griffin shared Franklin's specific intent by knowing the full extent of his criminal purpose and aided him by driving him to and from the crime.

Accordingly, even if a due-process violation occurred, it was harmless because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. See *Roy v. Gomez*, 108 F.3d 242 (9th Cir. 1997) (habeas case finding the omission of the "intent" element from the aiding and abetting instruction harmless because the jury could have found intent based on the evidence it considered); *Jones v. Zavaras*, 188 F.3d 518 (Table) (10th Cir. 1999) (habeas case finding erroneous jury instruction on the element of "deliberation" harmless because the Court was not left in grave doubt about the trial error); *Turrentine v. Mullin,* 390 F.3d 1181, 1191 (10th Cir. 2004), *cert. denied,* 545 U.S. 1106, 125 S.Ct. 2544, 162 L.Ed.2d 278 (2005) (habeas case finding erroneous instruction on malice harmless because the evidence of defendant's intent to kill his victims was "ample." *See O'Neal,*

31

513 U.S. at 436. *Jones v. Zavaras*, 1999 WL 565470, at 3. Habeas relief is thus not warranted.

## VII. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005); *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## VIII. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). *See United States v. Bedford,* 628 F.3d 1232 (10th Cir. 2010). The questions of constitutional error and harmless error in this case are both close calls about which reasonable jurists could disagree. Accordingly, the Court grants a certificate of appealability.

32

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied, and that a certificate of appealability is granted.

Dated this 26th day of September, 2014, at Topeka, Kansas.

s/Sam A. Crow
U.S. District Senior Judge

33